1  TANJA L. DARROW, Bar No. 175502
   tdarrow@littler.com
2  LITTLER MENDELSON, P.C.
   633 West 5th Street
3  63rd Floor
   Los Angeles, CA  90071
4  Telephone:  213.443.4300
   Facsimile:   213.443.4299
5
   SARAH E. ROSS, Bar No. 252206
6  sross@littler.com
   ANDREA R. MILANO, Bar No. 278937
7  amilano@littler.com
   LITTLER MENDELSON, P.C.
8  2049 Century Park East
   5th Floor
9  Los Angeles, CA  90067
   Telephone:  310.553.0308
10 Fax No.:   310.553.5583

11 Attorneys for Defendant
   MEDTRONIC, INC.
12

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR RENE ROMERO,<br><br>       Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC., a Minnesota Corporation; and DOES 1-50; inclusive,<br><br>       Defendant. | Case No.  8:15-cv-00877<br><br>**DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>**[28 U.S.C. §§ 1332 , 1441 & 1446]**<br><br>Complaint Filed:  April 24, 2015 (Orange County Superior Court) |

**TO THE CLERK OF THE FEDERAL DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant Medtronic, Inc. ("Defendant") contemporaneously with the filing of this Notice, hereby effects removal of the above-referenced action from the Superior Court in the State of California for the County of Orange to the United States District Court for the Central District of California. This removal is based on 28 U.S.C. sections 1441 and 1446 and, specifically, on the following grounds:

## I. JURISDICTION AND VENUE ARE PROPER

1. This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. Section 1332(a), and is one that may be removed to this Court by Defendant pursuant to 28 U.S.C. Section 1441(b) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as set forth below. 28 U.S.C. §§ 1332 , 1441(a) and § 1446(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c)(2), 1391 and 1446.

## II. STATUS OF THE PLEADINGS

3. This lawsuit arises out of Plaintiff Oscar Rene Romero's ("Plaintiff") employment with Defendant. *See* Declaration of Shelly Zacharias ("Zacharias Decl.") ¶ 2. On April 24, 2015, Plaintiff filed a Complaint in the Superior Court of the State of California, County of Orange, entitled *OSCAR RENE ROMERO V. MEDTRONIC, INC., AND DOES 1 THRU 50, INCLUSIVE,* designated as Case No. 30-2015-00784430-CU-WT-CJC. The Complaint asserts the following purported claims for relief: (1) Age Discrimination, (2) Failure to Prevent Discrimination and Harassment, (3) Failure to Pay Overtime Compensation, (4) Failure to Provide Meal & Rest Breaks, (5) Wrongful Termination in Violation of Public Policy, and (6) Unfair Business Practices.

4. On or about May 5, 2015, Plaintiff served the Summons and Complaint on Defendant. *See* Declaration of Tanja L. Darrow ("Darrow Decl.") ¶¶ 2, 3, Exhibits ("Exh.") A, B.

5. As of the date of this Notice of Removal, no other parties have been named or validly served with the Summons and Complaint in this matter. *Id.* ¶ 5.

6. To date, the following documents have been filed in this case with the Superior Court for the County of Los Angeles:

   a. Service of Process, Summons, Civil Case Cover Sheet, Complaint, Notice Re: Bookmarking Exhibits on Electronically Filed Documents, Expedited Jury Trial Information Sheet, Civil Department Calendar Scheduling Chart, and Alternative Dispute Resolution Information Package, all filed/served by Plaintiff. *Id.* ¶ 2, Exh. A.

   c. Proof of Service of Summons, filed by Plaintiff. *Id.* ¶ 3, Exh. B.

   d. Answer to Plaintiff's Unverified Complaint filed by Defendant. *Id.* ¶ 4, Exh. C.

### III. TIMELINESS OF REMOVAL

7. This Notice of Removal is timely in that it has been filed within thirty (30) days of Defendant's first receipt of the Summons and Complaint, on or about May 5, 2015, and within one year of the filing of the Complaint on April 24, 2015. *See* 28 U.S.C. § 1446(b).

### IV. COMPLETE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN THE PARTIES

#### A. Plaintiff is a Citizen of California

8. In the Complaint, Plaintiff alleges that he "was and is a resident of the County of Orange, State of California, and at all relevant times was employed by Defendant MEDTRONIC in the County of Orange." (Complaint ¶ 2). For diversity

purposes, a person is a "citizen" of the state in which he is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place she resides with the intention to remain). A person is domiciled where he or she has established by physical presence in a particular place, and intends to permanently or indefinitely remain in that place. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). As Plaintiff resides in the state of California with the intent to remain there, he is therefore a citizen of California for purposes of the instant jurisdictional analysis.

### B. Defendant Is Not A Citizen of California

9. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

#### i. Defendant Is Not Incorporated in The State of California

10. Defendant is a corporation organized and incorporated under the laws of the State of Delaware. *See* Declaration of Keyna Skeffington ("Skeffington Decl.") ¶ 2.

#### ii. Defendant Maintains Its Principal Place of Business in Minneapolis, Minnesota

11. Although courts previously employed one of a number of tests to determine a corporation's "principal place of business," the United States Supreme Court clarified this uncertainty and announced a single, uniform test to be applied in making such a determination. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). In this regard, the Court held that the "nerve center" test should be used to determine a corporation's "principal place of business." *Id.*

12. To this end, the Court reasoned that a corporation's "nerve center" is normally located where the corporation maintains its corporate headquarters and where the "corporation's officers direct, control, and coordinate the corporation's activities." *Id.* In other words, a corporation's "principal place of business" can be

found where the corporation's "brain" is located. *Id.*

13. Although the *Hertz* Court did not articulate a precise test by which to determine the location of a corporation's "nerve center," prior lower court decisions applying the "nerve center" analysis are instructive in this regard. Specifically, courts have previously considered the following list of non-exclusive factors in determining a corporation's "nerve center":

    a. where the company's home offices are located

    b. where the directors and stockholders meet;

    c. where the corporate officers and executives reside;

    d. where policy decisions are made;

    e. where general counsel resides and has its offices; and

    f. where the administrative and financial offices are located and the records kept.

*See, e.g., Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964); *see also State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989).

14. The "nerve center" of Defendant is indisputably located in Minneapolis, Minnesota.

    a. Defendant maintains its headquarters in Minneapolis, Minnesota. Skeffington Decl. ¶ 2.

    b. Nearly all of the corporate decisions of Defendant – such as executive, administrative and policymaking decisions, including but not limited to payroll, policies and direction regarding compensation – are made at its Minnesota headquarters. *Id.* ¶ 3.

    c. While Defendant maintains operational facilities in California, its high level officers direct, control and coordinate the corporation's activities from its corporate headquarters in Minneapolis, Minnesota. *Id.* ¶¶ 2, 4.

### C. The Parties Are Diverse

15. As set forth above, complete diversity of citizenship exists in the instant case because the parties, Plaintiff and Defendant, are citizens of different states.

16. Does 1 through 50 are wholly fictitious. The Complaint does not set forth the identity or status of any said fictitious Defendant, nor does it set forth any charging allegation against any fictitious Defendant. The citizenship of these doe Defendant is to be disregarded for the purposes of determining diversity jurisdiction, and therefore cannot destroy the diversity of citizenship between the parties in this action. 28 U.S.C. § 1441(a); *accord Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (citing 28 U.S.C. § 1441(a)); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

17. No other party is named or has been validly served as of the date of this Notice of Removal. Darrow Decl. ¶ 5.

## V. BASED ON PLAINTIFF'S COMPLAINT, THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

18. The Complaint does not indicate a total amount of damages claimed; consequently, Defendant only needs to show by a preponderance of the evidence (that it is more probable than not) that Plaintiff's claimed damages exceed the jurisdictional minimum. *Sanchez v. Monumental Life Insurance Company*, 95 F.3d 856, 862 (9th Cir. 1996), *amended* 102 F.3d 398, 404 (9th Cir. 1996).

19. Defendant denies the validity and merit of all of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, it can be reasonably ascertained from the pleadings and the prayer for relief that the amount in controversy does, in fact, exceed $75,000. In measuring the amount in controversy, the Court must assume the allegations of the Complaint are true and that a jury will return a verdict in favor of Plaintiff in all claims asserted in his Complaint. *Kenneth Rothschild Trust v. Morgan*

*Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

20. For his First, Second and Fifth Causes of action, Plaintiff seeks a recovery of lost wages, including both back wages and front pay. (Complaint, ¶¶ 23, 30, 48, Prayer for Relief). At the time of his termination, Plaintiff was earning an annual salary of approximately $38,478.15. *See* Zacharias Declaration ¶¶ 2, 3. His employment was terminated on approximately May 3, 2013. (Complaint ¶ 17). Although Defendant denies Plaintiff is entitled to recover any such damages, assuming *arguendo*, Plaintiff were to recover back wages from the time of his termination until the present (mid-June 2015), approximately 25 months, the amount of back pay would equal approximately $81,434. Moreover, if the case proceeds to trial in late April 2016, a year from when it was filed, and Plaintiff remains unemployed, he will be seeking a total of almost 36 months of lost wages, which is approximately $115,145.

21. In addition, front pay awards in California frequently span a number of years. *See Smith v. Brown-Forma Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1989) (front pay until mandatory retirement age reached); *Rabaga-Alvarez v. Dart Industries, Inc.*, 55 Cal. App. 3d 91, 97 (1976) (four years); *Drzewiecki v. H&R Block, Inc.*, 24 Cal. App. 3d 695, 705 (1972) (ten years). Even conservatively estimating that Plaintiff seeks front pay benefits for only the three years after trial, the amount of future wages in controversy in this case would total at least an additional $115,434. Thus, if this case goes to trial in late April 2016, it may reasonably be estimated that Plaintiff's claims of back pay and front pay would alone total an estimated **$230,579**.

22. In his Third and Sixth Causes of Action, Plaintiff also seeks unpaid overtime premiums. (Complaint, ¶¶ 12, 13, 37, 57, 58, Prayer for Relief). At the time of his termination, assuming a scheduled 40 hours/week, Plaintiff earned approximately $18.50 per hour. *See* Zacharias Declaration ¶¶ 2, 3. Assuming that Plaintiff is seeking overtime pay for the last four years of his employment and

1 assuming that he worked approximately 24 hours per week of uncompensated overtime (as he alleges and which Defendant vehemently denies) the amount of unpaid overtime in controversy would be **$138,528** (52 weeks x 4 years x 24 hours of overtime/week x $18.50/hour x 1.5 overtime premium). (Complaint ¶ 10).

23. In his Fourth Cause of Action, Plaintiff also seeks unpaid premiums for missed meal and rest periods. Assuming that Plaintiff missed at least one meal and rest period a day for 6 days a week, the amount of unpaid missed meal premiums would be **$46,176** (52 weeks x 4 years x 12 missed meal/rest periods/week x $18.50/missed meal/rest period).

24. Plaintiff also seeks a vague category of "penalties" for his alleged unpaid overtime and missed meal/rest periods. (Complaint ¶¶ 38, 45).

25. Plaintiff also alleges emotional distress and punitive damages. (Complaint ¶¶ 24, 26, 31, 32, 49, 50, Prayer for Relief). These categories of damages must be considered when calculating the amount in controversy. *See Coleman v. Assurant, Inc.*, 463 F. Supp. 2d 1164, 1168 (D. Nev. 2006) ("It is well established that punitive damages are part of the amount in controversy in a civil action.") (citing *Gibson v. Chrysler Corp.*, 261 F. 3d 927, 945 (9th Cir. 2001)); *Richmond v. All State Insurance*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) (general and special damages included in the amount in controversy). Numerous court decisions and jury verdicts in state and federal courts located within the Ninth Circuit demonstrate that compensatory and punitive damages in excess of $75,000 have been awarded to individual plaintiffs where, as here, the plaintiff has alleged claims for discrimination and wrongful termination. For example, in *Martin v. Arrow Electronics*, Case No. SACV041134 (C.D. Cal. 2006), the plaintiff was awarded in excess of one million dollars (including $300,000 for claimed pain and suffering) for allegations of, among others, discrimination and wrongful termination. Likewise, in *Leuzinger v. County of Lake*, Case No. C060398(SBA) (N.D. Cal. 2007), the plaintiff was awarded $1,679,001 for similar claims. Taking into consideration that Plaintiff seeks many

types of damages in excess of his lost earnings, the amount of damages claimed by Plaintiff more likely than not meets the minimum amount in controversy.

26. Plaintiff also seeks to recover attorneys' fees and costs. (Complaint ¶¶ 12, 13, 25, 32, 37, 38, 44, 60, Prayer for Relief). Cases involving the types of claims that Plaintiff has alleged in his Complaint require at least $75,000.00 in attorneys' fees to proceed through discovery and to trial during an approximate one-year period. *See Czarnik v. Ilumina*, Case No. 763972 (Cal. Sup. Ct. July 16, 2002) (plaintiff awarded $325,000 in attorneys' fees from court in case involving claims of discrimination and retaliatory termination). The attorneys' fee claim is included in determining the amount in controversy when, as in the case at hand, Plaintiff is claiming attorneys' fees pursuant to statute. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) ("When an underlying statute authorizes an award of attorneys' fees, . . . such fees may be included in the amount in controversy."). To date, Plaintiff has certainly incurred fees and costs in connection with preparing and filing his Complaint. In fact, at an assumed rate of $300 per hour, Plaintiff's counsel would need to spend only 250 hours of attorney time (a very conservative estimate of time spent through trial) to incur $75,000.00 in reasonable attorney's fees (250 x $300 = $75,000). *See* Darrow Decl., ¶ 6.

27. Based upon the pleadings, it does not appear to a "legal certainty that the claim is really for less than" the amount in controversy minimum. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). Thus, Defendant has carried its burden of demonstrating by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional minimum of $75,000.00.

## VI. NOTICE TO THE COURT AND PARTIES

28. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a

1  copy of the Notice of Removal will be filed with the Clerk of the Court for the
2  Superior Court of the County of Orange, California.

4  Dated:   June 4, 2015

/s/ Tanja L. Darrow
TANJA L. DARROW
SARAH E. ROSS
ANDREA R. MILANO
LITTLER MENDELSON, P.C.
Attorneys for Defendant
MEDTRONIC, INC.

Firmwide:133641142.1 014245.2098